UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-CV-578-GCM

| | |
|---|---|
| STANLEY MARVIN CAMPBELL, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| THE HANOVER INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Appellee. ) | |
| ) | |

**INTRODUCTION**

Stanley Marvin Campbell ("Trustee"), Trustee in Bankruptcy for ESA Environmental Specialists, Inc., appeals the Bankruptcy Court's Order granting The Hanover Insurance Company's ("Hanover") Motion for Summary Judgment. Specifically, the Trustee claims that the Bankruptcy Court erred in granting Summary Judgment for Hanover based on the earmarking defense and based on the new value defense. This Court holds that the Bankruptcy Court was correct to grant Summary Judgment in favor of Hanover. The Bankruptcy Court's order is therefore AFFIRMED.

**BACKGROUND**

ESA Environmental Specialists, Inc. ("ESA" or the "Debtor") was a full service environmental, construction, architectural, and industrial engineering firm in the business of providing services to third parties, including governmental agencies. Debtor performed federal construction jobs, each of which required Debtor to obtain both a performance and a payment bond under the Miller Act. 40 U.S.C. § 3131.

ESA obtained payment and performance bonds from Hanover in the fall of 2006 in conjunction with eight government contracts (the "Original Bonds"). In the spring of 2007, due to Hanover's concern with ESA's financial ability, Hanover refused to issue new bonds for seven additional government projects (the "New Bonds") unless ESA did all three of the following (the "Requirements"):

(1) paid the bond premiums for the New Bonds;

(2) obtained an irrevocable letter of credit in favor of Hanover in the amount of $1,375,000 (the "Letter of Credit"); and

(3) executed a Letter of Credit Collateral Agreement in the form supplied by Hanover.

ESA could not commence work on the seven government projects until the New Bonds were presented to the requisite government agencies.

To obtain the Letter of Credit, ESA needed to post a certificate of deposit with SunTrust Bank, which agreed to issue the Letter of Credit. ESA discussed this bonding issued with Prospect Capital ("Prospect") and on May 7, 2007 ESA and Prospect entered into a First Amendment to Credit Agreement. The purpose of the First Amendment was to advance $625,000 to the Debtor. On May 17, 2007, ESA and Prospect entered into a Second Amendment to Credit Agreement. The purpose of the Second Amendment was to advance $950,000 to the Debtor. Prospect then sent two wires to ESA's bank account, the first on May 8, 2007 in the amount of $625,000 and the second on May 17, 2007 in the amount of $925,000 (the "Prospect Funds").

On May 17, 2007, ESA transferred $1,375,000 of the Prospect Funds into a certificate of deposit with SunTrust to collateralize the Letter of Credit. The Prospect Funds were the only funds used by ESA to deposit into the certificate of deposit. Subsequently, on May 18, 2007, SunTrust issued the letter of credit to Hanover. Also on May 18, 2007, ESA delivered the bond premiums and

the Letter of Credit Collateral Agreement to Hanover's agent, Knauff Insurance. This satisfied all of the Requirements for issuance of the New Bonds and Knauff delivered the New Bonds to ESA on May 18, 2007. ESA then delivered the New Bonds to the government agencies.

On August 1, 2007, ESA filed a voluntary Chapter 11 petition with the Bankruptcy Court for the Western District of North Carolina. After the filing of the petition, Hanover drew on the Letter of Credit and received a payment from SunTrust Bank in the amount of $1,375,000.

On September 28, 2007, the Bankruptcy Court entered an order approving the sale of substantially all of the assets of ESA to Prospect Capital (or its designee). (Docket no. 141, 07-31532). The sale included an assumption and assignment to Prospect Capital's affiliate, ICS, of many of the Hanover bonded contracts and the sale of all avoidance actions under the Bankruptcy Code. ICS failed to complete the Hanover bonded contracts which were assigned and the Court entered an Order on February 15, 2008 permitting Hanover to exercise its rights as surety to complete the jobs.

On July 10, 2009, the Bankruptcy Court entered a "Stipulation between Chapter 7 Trustee and Prospect Capital Corporation and Order Approving Stipulation" (the "Stipulation"), which provided that the Trustee would have standing to pursue avoidance actions (despite the prior sale of such actions) with a split of any proceeds (after payment of the Trustee's fees and costs) in the following percentages: 75% to Prospect and 25% to the Trustee. (Docket No. 256, 07-31532). Additionally, the Stipulation approved an unsecured claim to Prospect in the amount of $11,775,000, which claim was entitled to pro rata distribution along with other unsecured claimants from the 25% recovery of the Trustee. The Bankruptcy Court provided that the Stipulation must be served on all parties in interest, who would thereafter have an opportunity to object and request a hearing. Hanover filed an objection to the Stipulation (Docket No. 266, 07-31532), and the Bankruptcy Court

continued a hearing on the objection until the hearing on Hanover's Motion for Summary Judgment (Docket No. 13, 09-3143).

The Chapter 7 Trustee, subsequent to entry of the Stipulation, filed an adversary proceeding against Hanover of July 31, 2009, claiming that: (1) Hanover was an indirect beneficiary of the transfer of the Prospect Funds into the certificate of deposit and (2) the transfer of the Prospect Funds was avoidable as a preferential transfer under 11 U.S.C. § 547.

On November 3, 2010, the Bankruptcy Court entered an Order granting summary judgment in favor of Hanover in the adversary proceeding. (Docket No. 25, 09-3143). The Bankruptcy Court held that Hanover was entitled to summary judgment as a matter of law because ESA's transfer of the Prospect Funds into the SunTrust certificate of deposit was not an avoidable transfer under § 547(b). First, the Bankruptcy Court found that Hanover demonstrated that it had a complete earmarking defense because the Prospect Funds were not property of ESA or the bankruptcy estate and the Trustee failed to meet his burden of proving under § 547(b) that there was a "transfer of an interest of the debtor in the property." Second, the Bankruptcy Court found that Hanover had a complete new value defense because the transfer of the Prospect Funds was: (1) a contemporaneous exchange for new value given to ESA by Hanover in the form of the New Bonds and the federal government contracts which ESA was able to obtain and (2) a substantially contemporaneous exchange under 11 U.S.C. § 547(c)(1).

The Trustee now appeals the Bankruptcy Court's Order granting Hanover's Motion for Summary Judgment.

## ANALYSIS

### A. STANDARD OF REVIEW

The Bankruptcy Court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for clear error. *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001).

### B. SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Rule 56 of the Federal Rules of Civil Procedure applies to summary judgment in bankruptcy proceedings. Fed. R. Bankr. P. 7056. When ruling on a motion for summary judgment the court is required to view all inferences drawn from the factual record in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id* at 586.

### C. THE EARMARKING DEFENSE

The Trustee appeals the Bankruptcy Court's holding that Hanover had a complete earmarking defense. Hanover demonstrated that it had a complete earmarking defense because the Prospect Funds were not property of ESA or the bankruptcy estate and the Trustee failed to meet his burden of proving under § 547(b) that there was a "transfer of an interest of the debtor in property." There was no preferential treatment in fact for the transfer of the Prospect Funds because it did not benefit Hanover out of estate assets to the detriment of other creditors. *Virginia National*

*Bank v. Woodson (In re Decker)*, 329 F.2d 836 (4th Cir. 1964).

The Trustee bears the burden of proving that an alleged avoidable transfer was a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). *See also In re Hood*, 118 B.R. 417, 419 (Bankr. D.S.C. 1990). Under the earmarking doctrine, which is a court fashioned doctrine, a third party makes a loan to a debtor so that the debtor is able to satisfy the claim of a designated creditor. *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356 (5th Cir. 1986). The loan is not property of the debtor, there is no diminution to the estate, and transfer of the funds to a creditor is not preferential. *In re Hood*, 118 B.R. 417 at 419-420 (citing *Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067 (6th Cir. 1987)). The earmarking doctrine is inapplicable when the trustee can prove, by a fair preponderance of the evidence, that the doctrine does not apply "and that what was transferred was in fact property in which the debtor had an interest." *In re Safe-T Brake of South Florida*, 162 B.R. 359, 365 (Bankr. S.D. Fla. 1993).

The Fourth Circuit's leading decision on the earmarking doctrine is *Virginia National Bank v. Woodson (In re Decker)*, 329 F.2d 836 (4th Cir. 1964). In *Decker*, the debtor's sister, in exchange for an assignment of the debtor's interest in pool memberships, paid a sum of money to the bank in satisfaction of the debtor's overdraft obligations. Subsequently, the debtor went into involuntary bankruptcy, the trustee sued the bank for recovery of the sum paid by the sister, and the district court ordered turnover of the sum. The Fourth Circuit reversed, noting that the sister's payment "was made for the specific purpose of paying at least a portion of a particular debt owed to the bank..." and that "as a general rule, such a payment... will not create a voidable preference [because] there has been no diminution of the value of the estate." *Id* at 839. The Circuit stated that "[t]he test is not what the creditor receives but what the bankruptcy estate has lost. It is the diminution of the bankrupt's estate, not the unequal payment to creditors, which is the evil sought to be remedied by

the avoidance of a preferential transfer." *Id* at 840. The *Decker* Court applied the earmarking doctrine because the debtor's sister insisted that the loan proceeds be used solely to pay the bank that was threatening her brother.

The payment in *Decker*, unlike the payments in this case, were made directly by a third party to the creditor. However, that fact is not determinative because other courts have held that a transfer of loan funds is not preferential even though the funds were placed into the debtor's account. *See In re Superior Stamp & Coin Co., Inc.,* 223 F.3d 1004, 1009 (9th Cir. 2000) (transfer of loan funds was not preferential despite funds being placed into debtor's bank account; the fact that debtor "may have had the power to divert the loan after it was deposited into [the debtor's] account does not amount to 'control' of the funds by [the debtor]"); *see also Coral Petroleum*, 797 F.2d at 1356 ("If all that occurs in a transfer is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed").

Appellant first argues that the Bankruptcy Court erred in granting summary judgment for Hanover because the antecedent debt requirement is not present in this case. In support of this argument, the Trustee claims that *Decker* did not recognize earmarking in the context present in this case because *Decker* was decided under section 60 of the former Bankruptcy Act and never specifically discussed earmarking as a defense to a preference. The Trustee further argues that there is a dispute as to whether the earmarking defense applies in this case because the source of the funds is not a guarantor. Appellant errantly asserts that the Fourth Circuit's failure to decide any earmarking case means that the elements of the defense have not been established in the Circuit. Therefore, Appellant argues that this Court should adopt tests articulated by other jurisdictions in either *In re Bohlen Enterprises, Ltd.,* 859 F.2d 561 (8th Cir. 1988) or in *In re Adams*, 240 B.R. 807

(Bkrtcy. D.Me., 1999).

This Court disagrees with Appellant's initial argument because it is clear that the Fourth Circuit did adopt and recognize the earmarking defense in *Decker*. Additionally, the fact that *Decker* was decided under section 60 of the former Bankruptcy Act does not persuade this Court to adopt Appellant's argument because numerous courts recognized the continuing validity of *Decker* under the Bankruptcy Code. *See Hartley*, 825 F.2d at 1071 (following *Decker* and holding that payment of funds to creditor was only voidable to the extent of value of security debtor gave third party in exchange for transfer); *see generally Active Wear, Inc. v. Parkdale Mills, Inc.*, 331 B.R. 669, 671 (W.D. Va. 2005) (citing five circuit courts of appeal which relied upon *Decker* since passage of the Bankruptcy Code). Thus, this Court refuses to follow Appellant's request to disregard Fourth Circuit precedent in favor of relying on tests articulated by Courts outside of this jurisdiction.

Second, Appellant argues that the Bankruptcy Court erred in granting summary judgment for Hanover because the earmarking defense does not apply when unsecured debt is replaced by secured debt. In support of this position, the Trustee argues that the secured advance to ESA by Prospect Capital substituted ESA's unsecured obligation to Hanover for ESA's new secured obligation to Prospect Capital. Appellant argues that an unsecured claim was replaced by a secured claim to the detriment of ESA's unsecured creditors thereby reducing the amount of property available to the unsecured creditors.

Again, Appellant's argument fails because Prospect did not receive any new collateral or security from ESA in exchange for the Prospect Funds. ESA gave no new security or collateral to Prospect and thus no new secured debt was incurred by ESA. It follows that there was no diminution of ESA's estate and no preferential transfer which can be avoided against Hanover.

Under the Fourth Circuit's ruling in *Decker*, Hanover, at most, could be held liable only for returning the value of any security given to Prospect in exchange for the Prospect funds. *See In re Decker*, 329 F.2d at 840 (remanding a portion of the case for determination by the District Court of the value of the swimming pool rights transferred from the debtor to the third party in exchange for the third party's payment to the creditor on behalf of the debtor, because the swimming pool rights may actually have been of value to the bankrupt's estate).

Third, Appellant argues that the earmarking defense does not apply because the debtor possessed and controlled the funds. In support of this position the Trustee asserts that: (1) a total of $1,575,000, only $1,375,000 of which was used to acquire the deposit securing the letter of credit, was advanced to ESA; (2) Hanover's submissions show ESA's control over the funds; (3) the funds were in ESA's control and possession for ten days prior to the date ESA collateralized the bonds with the letter of credit; and (4) the Credit Agreement between ESA and Prospect amounted to an unconditional loan.

Appellant's argument again fails. The fact that the funds were in ESA's account is not determinative because other courts have held that a transfer of loan funds is not preferential even when the funds were placed into the debtor's account. *See In re Superior Stamp & Coin Co., Inc.*, 223 F.3d 1004, 1009 (9th Cir. 2000) (transfer of loan funds was not preferential despite funds being placed into debtor's bank account; the fact that debtor "may have had the power to divert the loan after it was deposited into [the debtor's] account does not amount to 'control' of the funds by [the debtor]"); *see also Coral Petroleum*, 797 F.2d at 1356 ("If all that occurs in a transfer is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed"). Furthermore, the factual evidence considered by the Bankruptcy Court in

its summary judgment ruling clearly shows that the Prospect Funds were given, not as an unconditional loan, but rather to fund costs associated with entering into and fulfilling government contracts. Under the circumstances facing it, ESA could not enter into and fulfill government contracts without using the Prospect Funds for funding the certificate of deposit to collateralize the letter of credit.

Fourth, Appellant argues that there is a dispute of material fact concerning the earmarking defense. In support of this position, the Trustee claims that the Bankruptcy Court, facing competing affidavits, cannot grant summary judgment on the face of conflicting affidavits because a determination of credibility is required. *See Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979); *American Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995). Appellant claims that the Bankruptcy Court did not hear evidence to determine credibility of various affiants and thus, the Trustee claims that the evidence before the Bankruptcy Court was in conflict.

Again, Appellant's argument fails. The affidavits relied on by the Bankruptcy Court are not in conflict. Rather, both the Declaration of Charles Cole, former CEO of ESA, and the affidavit of John Francis Barry III, CEO of Prospect Capital, show that ESA and Prospect were aware that the Prospect Funds would be used to fund the certificate of deposit to collateralize the letter of credit and that the funds were advanced for this purpose. The fact that the language in the Cole Declaration is not identical to the language in the Barry Affidavit does not create a genuine dispute of material fact when both sworn documents clearly show that ESA would use the Prospect Funds to fund costs associated with entering into and fulfilling government contracts. As stated previously in this Order, ESA could not enter into and fulfill government contracts without using the Prospect Funds for funding the certificate of deposit to collateralize the letter of credit.

Fifth, Appellant argues that the Bankruptcy Court erred in considering matters from the

underlying bankruptcy case, including the statement of Prospect's Counsel as evidence of earmarking. This argument is without merit because it was not made before the Bankruptcy Court and Appellant failed to raise any objection to the Bankruptcy Court's consideration of this matter. A party must timely raise an objection to a court's consideration of the evidence in order to preserve that issue for appeal. "If a party fails to object to the inadmissibility of evidence submitted by its opponent in the summary judgment proceedings, the court may consider the evidence. The failure to raise the issue in the [trial] court constitutes a waiver of objection for purposes of summary judgment." *Moore's Federal Practice* § 56.91[7] (3rd ed. 2011); *see also* Fed. R. Evid. 103. The Fourth Circuit follows this standard. *See Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001). Also, it worth noting that the Appellant would like this Court to overturn the Bankruptcy Court because of its consideration of the statement of Prospect's Counsel, but at the same time Appellant sees no problem in the Bankruptcy Court considering similar statements cited to and discussed by Appellant in aid of his own position. Appellant cannot raise the issue of the Bankruptcy Court's consideration of matters from the underlying bankruptcy case for the first time on appeal because this argument was not made before the Bankruptcy Court and thus, it has been waived.

Sixth, Appellant argues that the Bankruptcy Court erred by assigning the Trustee with the burden of proof on earmarking. This argument is without merit and is not worth addressing in detail because the Bankruptcy Court concluded that "Hanover has demonstrated that it has a complete earmarking defense." (Docket No. 25, 09-3143). Although there is a split of authority regarding the formulation of the burden of proof on the earmarking defense that has not been addressed by the Fourth Circuit, the Bankruptcy Court's own language in its order clearly showed that, even if the burden shifted, Hanover met that burden.

Finally, the Appellant argues that the Bankruptcy Court erred in finding that Hanover had a complete earmarking defense because the earmarking defense is not applicable to the facts of this case. The Trustee claims that the Fourth Circuit never sanctioned the use of the earmarking defense outside of the context of a payment directly from a guarantor to a third party creditor because Appellant's characterization of *Decker*, 329 F.2d 836 (4th Cir. 1964), is that the case involved a direct payment from a guarantor to a creditor without passing through the debtor's estate. Thus, Appellant argues that the Bankruptcy Court for the Western District of North Carolina has taken it on its own initiative to grossly expand the law by permitting an earmarking defense outside of the direct payment by a guarantor context.

Appellant's argument that the Bankruptcy Court expanded the law by permitting an earmarking defense outside of the direct payment by a guarantor context is erroneous and deceptive. The words "guarantor" or "guarantee" never appear in the Fourth Circuit's *Decker* opinion. In fact, the payments at issue in *Decker* came from the debtor's sister who had no relationship to the underlying bank overdrafts. The sister never was a guarantor and she never guaranteed her brother's debts with the bank. It is crystal-clear that the sister was not a guarantor because the Fourth Circuit stated, when then the sister covered the debtor's overdrafts, that "[t]his was the first contact had by any representative of the bank with Vivian Decker concerning this particular transaction and it does not appear that any inquiry was made by the bank employee at that time, or subsequently, as to the nature of the transaction between Decker and his sister." *Decker*, 329 F.2d at 838. The Fourth Circuit applied the earmarking doctrine outside of the guarantor context in *Decker* and thus, the Bankruptcy Court properly applied that precedent to the case at hand.

In sum, this Court finds no clear error in the factual conclusions reached by the Bankruptcy Court underlying its decision that Hanover has a complete earmarking defense. The Prospect Funds

were not the property of ESA or of the bankruptcy estate and the Trustee failed to meet his burden of proving under § 547(b) that there was a transfer of an interest of the debtor in property. Furthermore, this Court, reviewing the law *de novo*, finds that *Decker* recognizes the existence of the earmarking defense in the Fourth Circuit and that Hanover has a complete earmarking defense as a matter of law. At the summary judgment stage, the Trustee may not rest on his pleadings, but must demonstrate that specific material facts give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. at 586. The Appellant failed to demonstrate the existence of specific facts giving rise to any genuine issue regarding the earmarking defense that would preclude the Bankruptcy Court from granting summary judgment in favor of Hanover.

### D. THE NEW VALUE DEFENSE

The Trustee appeals the Bankruptcy Court's ruling that Hanover has a complete new value defense. Hanover demonstrated that it had a complete new value defense because the transfer of the Prospect Funds was: (1) a contemporaneous exchange for new value given to ESA by Hanover in the form of the New Bonds and the federal government contracts which ESA was able to obtain and (2) a substantially contemporaneous exchange under 11 U.S.C. § 547(c)(1). The Appellee met its burden of proving new value in excess of the amount of the Prospect Funds by showing that ESA received the New Bonds in the total face amount of $7,889,350.86 and by showing that the New Bonds facilitated ESA's ability to proceed with new government contracts and earn revenue in excess of $1,375,000.

The new value defense is enunciated in the Bankruptcy Code at 11 U.S.C. § 547(c)(1), which

states that a bankruptcy trustee cannot recover an alleged preferential transfer if the transfer was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." The purpose of the new value defense is "to encourage creditors to deal with troubled debtors without fear that they will have to disgorge payments received for value given." *United Rentals, Inc. v. Angell*, 592 F.3d 525, 529 (4th Cir. 2010) (citation omitted). § 547(c)(1) was designed to address the problem that those on the verge of bankruptcy still need to buy things. *Id* (citations omitted). Furthermore, the preference section's goal of protecting the equality of distribution among the debtors is not harmed by protecting contemporaneous exchanges for new value from avoidance because such exchanges do not diminish the size of the debtor's estate. *Id* (citation omitted). "The party against whom recovery or avoidance is sought bears the burden of proving a § 547(c) defense." *Id* at 531.

Appellant's argument, that the Bankruptcy Court erred in finding that Hanover had a complete new value defense, is premised on the position that Hanover failed to meet its burden of proving the amount of the new value. In support of his position, the Trustee claims that neither the face amount of the New Bonds nor the expected revenue from government contracts were new value because Hanover did not provide these items to ESA in exchange for the $1,375,000 Letter of Credit. The Trustee argues that Hanover could not give ESA more than $1,375,000 in value because Hanover charged only $74,071 for premiums on the New Bonds. Further, Appellant claims that the Letter of Credit was not supplied solely as security for the New Bonds because the Letter of Credit Agreement expressly covers "any other obligations" and therefore, there is no evidence establishing a value for the portion of the Letter of Credit attributable to the New Bonds and the portion attributable to the Old Bonds. In sum, the Trustee argues that the only evidence of value is the

$74,071 premium for the New Bonds.

Appellant's argument fails because Hanover did meet its burden of proof as to the new value defense under § 547(c)(1). *United Rentals*, 592 F.3d at 531. Hanover presented significant evidence of new value to the Bankruptcy Court including the total face amount of the New Bonds ($7,889,350.86), the awarding to ESA of seven government jobs (valued at $3,944,675.43) due to ESA's receipt of the New Bonds, and the fact that the New Bonds provided ESA the ability to proceed with new government contracts and to earn revenues in excess of $1,375,000. The fact that the government contracts were not provided to ESA by Hanover does not further Appellant's position because federal courts recognize that new value can be provided by an indirect third party. *See Collier on Bankruptcy* ¶ 547.04[1][c] ("Payment to a creditor may be exempt from avoidance as a preference if the debtor receives contemporaneous new value from a party other than the creditor."); *see also In re Microwave Products of America, Inc.*, 118 B.R. 556 at 572; *In re Kumar Bavishi & Associates*, 906 F.2d 942 (3rd Cir. 1990); *In re Gem Constr. Corp. of Virginia*, 262 B/R/ 638, 646 (Bankr. E.D. Va. 2000). Here, ESA received contemporaneous new value directly attributable to Hanover's issuance of the New Bonds. Moreover, Appellant's position that the value of the New Bonds was the premiums which ESA paid for them is erroneous because the premiums were charged by Hanover when it received as security a $1,375,000 Letter of Credit. Finally, testimony of Mr. Cole illustrated that the government contracts obtained by ESA would allow ESA to earn at least $1,375,000 in revenue.

This Court finds no clear error in the factual conclusions reached by the Bankruptcy Court underlying its decision that Hanover has a complete new value defense. Hanover did prove that it gave a contemporaneous exchange for new value to ESA in the form of the New Bonds and the federal government contracts which ESA obtained and performed after receipt of the New Bonds.

Additionally, Hanover demonstrated that a substantially contemporaneous exchange was made under 11 U.S.C. § 547(c)(1) because the Letter of Credit was provided to Hanover on the same date that Hanover gave ESA the New Bonds. After a *de novo* review of the law regarding the new value defense, this Court is satisfied that the Bankrupcty Court was correct to hold that Hanover demonstrated a complete new value defense as a matter of law. Moreover, the Bankruptcy Court noted that the Trustee did not present evidence contesting the fact that the exchange was a contemporaneous exchange for new value. At the summary judgment stage, the Trustee may not rest on his pleadings, but must demonstrate that specific material facts give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. at 586. The Appellant failed to demonstrate the existence of specific facts giving rise to any genuine issue regarding the new value defense that would preclude the Bankruptcy Court from granting summary judgment in favor of Hanover.

**CONCLUSION**

The Court is satisfied that the Bankruptcy Court made no clear error in any of its factual conclusions. Upon a review of the applicable law, the Court is satisfied that Hanover is entitled to summary judgment and that Hanover demonstrated that it has both a complete earmarking defense and a complete new value defense. Accordingly, the Bankruptcy Court's order granting summary judgment to Appellee is AFFIRMED.

**IT IS SO ORDERED**

Signed: September 22, 2011

Graham C. Mullen
United States District Judge